UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SCOTT DAVIS, | : | Case No. 1:08-cv-291 |
| Plaintiff, | : | Judge S. Arthur Spiegel |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE BE CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore unentitled to a period of disability, disability income benefits ("DIB") and supplemental security income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. 20-32) (ALJ's decision)).

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

**I.**

On December 21, 2001, Plaintiff Cora E. Smith[2] filed an application for disability insurance benefits alleging a disability onset date of April 16, 1999, due to low back and leg pain, difficulty breathing, heart problems, depression, and anxiety. (Tr. 20, 40-113, 573-85).

Upon denial of her claims on the state agency levels, she requested a hearing *de novo* before an ALJ. A hearing was scheduled three times. The first hearing was scheduled for April 21, 2005, at which time a continuance was requested and granted until June 15, 2005. (Tr. 20). Plaintiff failed to appear at the June 15 hearing and, accordingly, the hearing was rescheduled for August 12, 2005. At the August 12 hearing, Plaintiff's counsel appeared, but her client did not. (*Id*). When Plaintiff failed to appear, her attorney agreed that she was not an essential witness and waived her presence. (*Id*.) The hearing was held for purposes of obtaining the testimony of vocational expert Eric Pruitt. (*Id*.)

On March 3, 2006, the ALJ entered his decision finding Plaintiff not disabled. (Tr. 32). That decision became the final determination upon denial of review by the Appeals

---

[2] After filing the instant appeal, Ms. Smith died on November 3, 2008. (Doc. 7). Pursuant to 20 CFR § 416.542(b), Plaintiff has no eligible spouse surviving her, and, therefore, she cannot be found eligible for SSI benefits. However, her application for DIB is still pending before the Court. On January 13, 2009, Plaintiff's counsel submitted a motion to substitute party (Doc. 8), which was granted by this Court (Doc. 9). Scott Davis, Plaintiff's son, was substituted for the deceased Plaintiff pursuant to Fed. R. Civ. P. 25(a)(1). (Doc. 9).

Council. (Tr. 7-39; 586-602).[3]

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant met the insured status requirements of the Social Security Act through December 2003.

2. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b) and 416.920(b)).

3. The claimant has the following "severe" impairments: pulmonary fibrosis with mild chronic obstructive and restrictive lung disease, degenerative changes in lumbar spine, dysthymia, and polysubstance abuse (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift up to fifty pounds occasionally and twenty five pounds frequently; she must have a temperature-controlled environment; and she is limited to simple, repetitive tasks; and to low stress jobs with no dealing with the public, no teamwork, no fast-paced work, and no production quotas.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 12, 1947 and was 52 years old on the alleged disability onset date, which is defined as "closely approaching advanced age" and she is now 58 years old and of "advanced age" (20 CFR 404.1563 and 416.963).

---

[3] Plaintiff filed a subsequent application for SSI on February 23, 2007, and she received a favorable determination. (Tr. 8, 11-15). That application is not at issue in this case.

8. The claimant has an eleventh-grade "limited" education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. In view of claimant's age and education, transferability of work skills is immaterial (Appendix 2, Subpart P. Regulations No. 4).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant number in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a "disability," as defined in the Social Security Act, from April 16, 1999 through her date last insured of December 2003 for purposes of Title II or through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 23 - 32).

In summary, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to a period of disability, SSI, or DIB. (Tr. 32).

On appeal, Plaintiff argues that: (1) the ALJ erred by failing to give sufficient weight to the physicians' findings; (2) the ALJ erred by drawing negative inferences from the fact that Plaintiff failed to appear at her hearing; and (3) the ALJ erred in relying on the vocational expert's answers to an improper hypothetical question. (Doc. 5 at 4-8). Each argument will be addressed in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**A.**

For her first assignment of error, Plaintiff maintains that the ALJ erred by failing to give sufficient weight to the physicians' findings. Plaintiff alleges that the ALJ failed to properly weigh the medical source opinions of Drs. Kaiser, Williams, Johnson, and

Pledger. (Doc. 5 at 4-6).

The ALJ bears the responsibility for resolving conflicts and weighing the medical evidence in the record. *See Richardson*, 402 U.S. at 399 ("We . . . are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). An ALJ is not required to accept an opinion of disability because a medical source's opinion about the ultimate issue of disability is entitled to no particular weight. *See* 20 C.F.R. § 404.1527(e)(1) (the Commissioner is responsible for making the determination about whether a claimant meets the statutory definition of disability). An ALJ is ultimately responsible for assessing Plaintiff's residual functional capacity ("RFC"), considering medical source opinions and other relevant evidence. *See* 20 C.F.R. §§ 404.1527(e), 404.1545. The ALJ reviewed the evidence as a whole and determined to the extent Plaintiff had limitations resulting from her impairments, that those limitations were not debilitating, and that she could perform a range of medium work. (Tr. 17-32).

Plaintiff relies on *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004), 20 C.F.R.§ 404.1527, and SSR 96-2p to support her contention. (Doc. 5 at 4-6).[4] In *Wilson*, the Court found that although substantial evidence otherwise supported the ALJ's decision, the Court nevertheless reversed the ALJ's decision because the ALJ failed to follow the

---

[4] Plaintiff also alleges that the ALJ did not discuss all of the evidence. (Doc. 5 at 6). However, an ALJ does not have to discuss every piece of evidence in the record. *See Walker v. Sec'y. of Health & Human Servs*., 884 F.2d 241, 245 (6th Cir. 1989).

procedural regulations and failed to give good reasons for not accepting a treating source's opinion. *See Wilson*, 378 F.3d 541 at 546-47; 20 C.F.R. § 404.1527(d)(2) (the ALJ must articulate "good reasons" for the weight given to the opinion of a treating source). For the reasons discussed below, Plaintiff's arguments should be rejected.

Contrary to Plaintiff's allegations, and consistent with the regulations, the ALJ provided several good reasons for finding that the opinions of Drs. Kaiser and Williams were not entitled to the special weight afforded to treating medical sources. The ALJ specifically discussed both Drs. Kaiser's and Williams' opinions and identified evidence that supported his reason for rejecting their opinions. (Tr. 26-28). *See Wilson*, 378 F.3d at 546.

With respect to Dr. Kaiser, the ALJ considered the frequency (or lack thereof) which Plaintiff saw Dr. Kaiser (Tr. 26); the records showed very few visits after her alleged onset date of April 16, 1999 (Tr. 231-77). Additionally, the ALJ considered that the findings contained in Dr. Kaiser's records did not support a finding of debilitating impairments. (Tr. 26-27). Although Dr. Kaiser's records showed Plaintiff had a "severe" pulmonary condition, Plaintiff had not been motivated to stop smoking, as he advised her to do. (Tr. 27, 231; *see also* Tr. 373, 420, 477, 513). The ALJ also noted that Dr. Kaiser's objective findings did not support his extreme limitations. (Tr. 26-27, 270-77). Dr. Kaiser reported that Plaintiff had symmetric reflexes; could walk on heels and toes;

could rise from a squat; could perform fine and gross manipulations; had decrease range of motion but no evidence of muscle atrophy; and although she was "slow to ambulate," she had no limp. (Tr. 270-71). Dr. Kaiser noted no abnormal cardiac findings or persistent, uncompensated, chronic heart failure. (Tr. 272-74). The ALJ found that Dr. Kaiser's opinion was not entitled to controlling or significant weight because it was inconsistent with and unsupported by the record evidence as a whole. (Tr. 26-27). *See* 20 C.F.R. §§ 404.1527(d)(2) and (d)(3)-(4).

In discounting Dr. Williams' opinion, the ALJ noted that Dr. Williams saw Plaintiff intermittently from October 1999 to January 2004, prescribed conservative treatment of medication and physical therapy, and that he primarily provided Plaintiff with medication refills rather than performing extensive evaluations. (Tr. 27-28, 421-75, 536-56; *see also* Tr. 328-50, 461). *See* 20 C.F.R. § 404.1527(d)(2)(ii) (consideration is given to the treatment the medical source has provided and the kinds and extent of examinations and testing the source has performed in determining how much weight to afford the opinion). The ALJ also noted that, although Dr. Williams opined that Plaintiff had extreme functional limitations, he did not provide any objective support for his opinion. (Tr. 27-28, 451-54, 532-35). Dr. Williams found that despite Plaintiff's spine problems, she had normal deep tendon reflexes and normal strength. (Tr. 444, 451, 532). These objective findings did not support Dr. Williams' opinion.

Dr. Johnson, a consultative examiner, saw Plaintiff once and was not a "treating" physician, and, therefore, would not have been entitled to the controlling or significant weight given to treating sources. *See* 20 C.F.R. § 404.1502 (a treating source has an ongoing treatment relationship). In any event, the ALJ provided detailed reasons for rejecting Dr. Johnson's opinion. (Tr. 25-26). The ALJ concluded that Dr. Johnson's opinion was based on Plaintiff's subjective complaints rather than objective medical evidence. (Tr. 26). For instance, as the ALJ noted, one of Dr. Johnson's diagnostic impressions was that of congestive heart failure; however, Dr. Johnson did not have medical records regarding that condition and seemingly relied solely on Plaintiff's reported history. (Tr. 25-26, 301). Moreover, on examination, Dr. Johnson noted that although Plaintiff had some diminished straight leg raising and range of motion in her hips and lumbar spine, she ambulated with a slow, normal gait without the use of any ambulatory aids; and had intact reflexes, intact sensation, intact motor function, and no evidence of edema or radiculopathy. (Tr. 26, 298-301, 303-05). A lumbar spine x-ray was normal. (Tr. 26, 306). The ALJ also found it significant that the state agency reviewer disagreed with Dr. Johnson's opinion and opined that Plaintiff did not have even a severe physical impairment. (Tr. 26, 355). As such, it was reasonable for the ALJ to reject Dr. Johnson's opinion.

Although the ALJ did not address Dr. Pledger's June 18, 1999 opinion, it was harmless error. First, Dr. Pledger only saw Plaintiff two times, and was not a "treating" physician. (Tr. 210). *See* 20 C.F.R. § 404.1502. Further, Dr. Pledger noted that he last

examined Plaintiff on July 8, 1998, which was more than nine months before her alleged onset date of April 1999. (Tr. 205). Dr. Pledger's opinion was based on an examination that occurred nine months prior to the alleged onset date and thus was not relevant to assessing Plaintiff's disability claim.

Plaintiff also takes issue with the ALJ's consideration that, despite her pulmonary impairment, Dr. Vuong, the pulmonary specialist, although given an opportunity, failed to provide an assessment of Plaintiff's functional limitations. (Doc. 5 at 5-6; Tr. 28, 413-16). As the ALJ noted, Dr. Vuong did not find that Plaintiff suffered from disabling functional limitations. (Tr. 28). Despite Plaintiff's argument that Dr. Vuong did not complete assessment forms (Doc. 5 at 5-6), in fact, Dr. Vuong was <u>unwilling</u> to provide exertional limitations, yet he was willing to provide environmental limitations. (Tr. 414-16). This evidence fails to support Plaintiff's argument that her lung impairment prevented her from performing the demands of properly modified work activities. The ALJ's decision identified sufficient evidence to support his decision.

**B.**

For her second assignment of error, Plaintiff maintains that the ALJ erred by drawing negative inferences from the fact that she failed to appear at her hearing.

Plaintiff, who requested a hearing (Tr. 62), admits that her hearing was scheduled three times: April 21, 2005, June 15, 2005, and September 13, 2005. (Tr. 591, 594; *see also* Tr. 33-34, 63, 72, 82). On April 21, 2005, Plaintiff's attorney told the ALJ that Plaintiff was sick and could not attend the hearing and the hearing was to be rescheduled.

(Tr. 591). On June 15, 2005, Plaintiff failed to appear and the ALJ issued a notice to show cause because Plaintiff failed to provide any explanation for her failure to attend. (Tr. 80- 81). On September 13, 2005, Plaintiff also failed to appear without any explanation. (Tr. 594). Her attorney indicated that in previous conversations, Plaintiff gave assurances that she would attend. (Tr. 594). Indeed, Plaintiff's attorney stated that she used "strong language with [Plaintiff] at that time to tell her that her attendance was required to be here today." (Tr. 594). These statements certainly suggest that Plaintiff and her attorney also felt, just like the ALJ, that it was necessary for Plaintiff to attend the hearing. Moreover, as the ALJ noted, Plaintiff had attended consultative examinations as well as visited her own doctors, and thus the ALJ concluded there was no reason for her failure to appear at the hearing. (Tr. 29). Therefore, it was reasonable for the ALJ draw negative inferences when Plaintiff failed to appear at her hearing.

Plaintiff challenges the ALJ's credibility finding on the basis that the ALJ improperly drew negative inferences from her failure to appear at the hearing. (Doc. 5 at 6). Citing to 20 CFR § 404.948 (b), Plaintiff argues that she was not required to appear and testify, and that her attorney stated that she was not an essential witness in view of the medical evidence. (Doc. 5 at 6). As an initial matter, the regulation that Plaintiff cites provides specific conditions under which an ALJ may decide a case on the record and not conduct an oral hearing. None of the conditions contained in that regulation apply in Plaintiff's case. *See* 20 CFR §§ 404.948 (b)(i) and (ii) ("You and all the parties indicate in writing that you do not wish to appear before the administrative law judge at an oral

-11-

hearing; or (ii) You live outside the United States and you do not inform us that you want to appear and there are no other parties who wish to appear."). It is true that the regulations provide that a claimant can waive her right to appear at a hearing or she can make her appearance by means of a designated representative. *See* 20 C.F.R. §§ 404.950 (a) and (b). However, as was done in this case, an ALJ may schedule a hearing notwithstanding a claimant's waiver of her right to appear at a hearing, if he believes the claimant's personal appearance and testimony are necessary to decide the case. (Tr. 29, 594). *See* 20 C.F.R. § 404.950 (b). And, significantly, Plaintiff is responsible for providing evidence to support her claim. Therefore, it was reasonable for the ALJ to consider Plaintiff's failure to appear and testify on her own behalf in assessing the credibility of her allegations. This is especially true viewing the circumstances regarding Plaintiff's failure to attend the hearing.

An ALJ's credibility finding in particular is entitled to considerable deference, and reviewing courts do not generally make *de novo* credibility findings. *See Gooch v. Sec'y. of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987) ("[W]e will not normally substitute our impressions on the veracity of a witness for those of the trier of fact."). Contrary to Plaintiff's contention, the ALJ assessed Plaintiff's credibility consistent with the regulations. While the ALJ's decision may not detail every possible consideration that could go into the evaluation of credibility, the ALJ reasonably considered Plaintiff's allegations and testimony and articulated the weight given those statements in the context of the record as a whole. (Tr. 29-31). *See Walker v. Sec'y of Health & Human*

*Servs.*, 884 F.2d 241, 245 (6th Cir. 1989) (an ALJ need not address every piece of evidence in the record). The ALJ accommodated Plaintiff's allegations to the extent they were supported by the record as a whole. 20 C.F.R. §§ 404.1529 (c), (d)(4).

Moreover, in accordance with the regulations, the ALJ did not solely rely on this factor in finding that Plaintiff's allegations of disability were not fully credible, but he considered the record evidence as a whole. *See* 20 C.F.R. § 404.1529 (a) (consideration is given to "all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."); SSR 96-7p ("Based on a consideration of all of the evidence in the case record, the adjudicator may find all, only some, or none of an individual's allegations to be credible."). For instance, the ALJ noted that there was a gap in Plaintiff's treatment, and that although Plaintiff alleged an onset date of April 16, 1999, there was no evidence of treatment in the year 2000. (Tr. 29). *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (failure to seek treatment undermines claims of debilitating limitations).

The ALJ also considered that Plaintiff seemingly denied or downplayed evidence of substance abuse problems. (Tr. 29). The ALJ reached his conclusion based on the fact that the medical records demonstrated evidence of alcohol abuse, Vicodin abuse, Ativan abuse, early medication refills, and substance induced "combative" behavior. (Tr. 28-30; *see e.g.,* 284, 286, 289, 435-36, 500-01, 551-52, 558-59, 563, 566, 571). Plaintiff denies that she had substance abuse problems and contends that she overdosed on her

medications, which demonstrated the severity of her "nervous problems." (Doc. 5 at 7). However, as the ALJ pointed out, the record lacked evidence of professional mental health treatment. (Tr. 29). Plaintiff does not cite to any evidence that supports her contentions and the record evidence seriously detracted from Plaintiff's allegations of disabling pain. *See* 20 C.F.R. § 404.1529(c)(4) (ALJ considers whether there are inconsistencies in the evidence and any conflicts between the claimant's statements and the other record evidence).

The ALJ's credibility findings were legally adequate for these circumstances. To the extent that Plaintiff had work-related limitations resulting from her impairments, the ALJ reasonably accommodated her credible limitations. As discussed above, the ALJ, who is responsible for weighing the evidence, reviewed the record evidence as a whole. Plaintiff provided no persuasive evidence that contradicted these findings and substantial evidence supports the ALJ's determination.

## C.

For her final assignment of error, Plaintiff maintains that the ALJ erred by relying on the vocational expert's answers to an improper hypothetical question.

On September 13, 2005, Eric Pruitt, a vocational expert ("VE"), testified that Plaintiff's past work as a mental retardation aide (medium, skilled), nursing assistant (medium, semi-skilled), housekeeper (heavy, unskilled), and grocery clerk (light, semiskilled) had no transferable skills to light or sedentary work. (Tr. 595-97; *see also* Tr. 121, 137-44). The ALJ asked the VE to consider a hypothetical person with

Plaintiff's vocational characteristics, who was limited to medium exertional work in a clean, and temperature-controlled environment; and could perform low stress jobs with no dealing with the public, no fast paced work, low production quotas, and no team work. (Tr. 597-98). The ALJ also limited the individual to simple, repetitive, tasks. (Tr. 598). The VE testified that the individual could perform Plaintiff's past work as a nursing assistant. (Tr. 598). The VE also testified that in the Springfield, Dayton, Cincinnati region (Tr. 596), there would be other work including 19,500 medium jobs, with representative jobs such as a punch press operator (2,900 jobs), sandwich maker that did not involve public involvement (500 jobs), and machine packager (1,200 jobs). (Tr. 598-99). The VE also testified that Plaintiff could perform approximately 33,300 light jobs. (Tr. 599).

The VE's testimony constitutes substantial evidence supporting the ALJ's decision that Plaintiff was not disabled because she could perform a significant number of jobs in the national economy. (Tr. 31-32). The ALJ is entitled to rely on the expertise of the VE. *See Varley v. Sec'y. of Health & Human Servs.*, 820 F.2d 777 (6th Cir. 1987).

Plaintiff contends that the ALJ's hypothetical question to the VE failed to include other functional limitations. (Doc. 5 at 7). However, the record evidence fails to support her contention that she required more limitations than those found by the ALJ. *See* 20 C.F.R. §§ 404.1527(e), 404.1545 (the ALJ is ultimately responsible for assessing Plaintiff's RFC, considering medical source opinions and other relevant evidence). The ALJ is only required to incorporate into the hypothetical those limitations which have

been accepted as credible.  *See Casey*, 987 F.2d at 1235.  To the extent that Plaintiff had any limitations from her impairments, the hypothetical question posed to the VE accurately reflected all of the limitations that the ALJ found credible.

Plaintiff also asserts that if the ALJ had limited her to unskilled, light work in March 2002, when she was 55 years old, the ALJ should have found her disabled pursuant to the medical-vocational guidelines ("GRID") Rule 202.02.  (Doc. 5 at 4, 8).  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 202.02.  Furthermore, Plaintiff argues that if she were limited to sedentary work, she would be disabled on her alleged onset date of April 16, 1999 under GRID Rule 201.10.  (Doc. 5 at 4, 8).  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 201.10.

Plaintiff's arguments are based on her contention that the ALJ erred in making his RFC finding.  GRID Rules 202.02 and 201.14 direct a finding of "disabled" for an individual who is limited to light work and sedentary work, respectively.  *See Id.*  Here, the ALJ reasonably found that Plaintiff could perform a range of medium work, and, therefore, the GRID Rules do not apply.  (Tr. 25, 31).  *See e.g., Bradford v. Sec'y. of Dept. of Health & Human Servs.*, 803 F.2d 871, 873-74 (6th Cir. 1986) (sedentary GRID rule did not apply where ALJ found Plaintiff possessed the maximum residual capacity to perform greater exertional work).  Accordingly, the ALJ reasonably relied on the VE's testimony to determine that Plaintiff could perform a significant number of jobs in the national economy.

Here, there is not overwhelming proof of disability. Substantial evidence supports the ALJ's finding that Plaintiff was not disabled, and she has not established a proper basis for reversal.

### III.

For the foregoing reasons, Plaintiff's assignments of error are without merit. The ALJ's decision is supported by substantial evidence and should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner, that Plaintiff was not entitled to a period of disability, disability income benefits, or supplemental security income be found **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**; and, as no further matters remain pending for the Court's review, this case be **CLOSED.**

Date: June 30, 2009    s/ Timothy S. Black
　　　　　　　　　　　　Timothy S. Black
　　　　　　　　　　　　United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| SCOTT DAVIS, | : | Case No. 1:08-cv-291 |
| | : | |
| Plaintiff, | : | Judge S. Arthur Spiegel |
| | : | Magistrate Judge Timothy S. Black |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **TEN (10) DAYS** after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to **THIRTEEN (13) DAYS** (excluding intervening Saturdays, Sundays, and legal holidays) when this Report is being served by mail and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **TEN (10) DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).